ROBERT R. ROGINSON, CA Bar No. 185286
robert.roginson@ogletree.com
ALEXANDER M. CHEMERS, CA Bar No. 263726
zander.chemers@ogletree.com
JULIANA C. VALLIER, CA Bar No. 345339
juliana.vallier@ogletree.com
OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
400 South Hope Street, Suite 1200
Los Angeles, CA 90071
Telephone:  213-239-9800
Facsimile:   213-239-9045

*[Additional Counsel on following page]*

Attorneys for Defendant
CEVA FREIGHT, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT ESPINOSA; RUXNER ANDINO; EMEKA ANIAGBA; MAYCOL CAMEY; HANS DURAN; JOSE FERNANDEZ; CESAR GALINDO; ANTONIO HERMOSILLO; OTASOWIE ISIBOR; ISRAEL PONCE; RAFAEL ZAYAS; GUSTAVO TARIN; and MANUEL GUZMAN,<br><br>Plaintiffs,<br><br>v.<br><br>CEVA FREIGHT, LLC, a Delaware Company; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-00659-ODW-E<br><br>Date:   July 14, 2025<br>Time:   Tim1:30 p.m.<br>Place:  Courtroom 5D<br><br>**DEFENDANT CEVA FREIGHT, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: January 27, 2023<br>Trial Date:      October 14, 2025<br>District Judge:  Hon. Otis D. Wright II<br>                 Courtroom 5D, First St.<br>Magistrate Judge: Hon. Charles F. Eick<br>                  Courtroom 750, Roybal |

CONOR J. DALE, CA Bar No. 274123
conor.dale.jacksonlewis.com
JACKSON LEWIS P.C.
50 California St., 9th Floor
San Francisco, CA 94111
Telephone: (415) 394-9400
Facsimile:  (415) 394-9401

Attorneys for Defendant
CEVA FREIGHT, LLC

DEFENDANT CEVA FREIGHT, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................... 5

II. LEGAL ARGUMENT .............................................................................................. 5

    A. CEVA is Not a "Hiring" Entity, and Cargomatic Satisfies the ABC Test ................................................................................. 5

    B. The Undisputed Evidence is That CEVA Operates as a Shipper ........................................................................................... 7

    C. CEVA Satisfies Part B of the ABC Test ........................................ 9

        1. Plaintiffs were incidental to CEVA's business ..................... 9

        2. Plaintiffs did not continuously perform work for CEVA ................................................................................. 11

        3. CEVA does not proclaim to be in the truck driving business ............................................................................. 13

III. CONCLUSION ...................................................................................................... 15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016)..................................................................6

*Ruggiero v. Am. United Life Ins. Co.*,
    137 F. Supp. 3d 104 (D. Mass. 2015)................................................................14

**California Cases**

*Curry v. Equilon Enters.*,
    23 Cal. App. 5th 289 (2018)..............................................................................14

*Henderson v. Equilon Enters.*,
    40 Cal. App. 5th 1111 (2019).............................................................................6

**California Statutes**

California Labor Code
    § 2775(b)(1).......................................................................................................15

**Other Authorities**

www.irs.gov/businesses/small-businesses-self-employed/business-structures.............................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

No matter how Plaintiffs Jose Fernandez ("Fernandez"), Roosevelt Espinosa ("Espinosa"), and Manuel Guzman ("Guzman") (collectively, "Plaintiffs") tell their tale, it remains undisputed that Plaintiffs are three layers removed from Defendant CEVA Freight, LLC ("Defendant" or "CEVA"). Plaintiffs performed services for their own motor carrier businesses, those motor carrier businesses performed work for Cargomatic, and Cargomatic contracted with CEVA, which provided supply chain solutions for its customers. Yet, Plaintiffs ignore these distinct roles and the evidence, and argue that Plaintiffs and CEVA perform the same work: truck driving. This contradicts the evidence, a federally authorized system, and the shipper-broker-carrier model commonly used in the freight transportation industry.

## II.  LEGAL ARGUMENT

### A.  CEVA is Not a "Hiring" Entity, and Cargomatic Satisfies the ABC Test

In its moving papers, CEVA showed—and Plaintiffs do not dispute—that Plaintiffs have not and could not have sued Cargomatic because Cargomatic satisfies the ABC test. The evidence is undisputed that Cargomatic is the only entity that contracted with Plaintiffs' businesses. (SUF49) Likewise, Cargomatic is the only entity *assigned* work to Plaintiffs' motor carrier businesses (SUF34,58-60), as well as *negotiated* rates with, and *paid*, them (SUF54-56,59-60,63). But the undisputed evidence also demonstrates that Cargomatic satisfies each prong of the ABC test and therefore could not have been deemed Plaintiffs' employer. Because of these undisputed facts, Plaintiffs ask the Court: (1) to wholly ignore Cargomatic and (2) to interpret the ABC as if in a vacuum.

California courts have not yet defined how a trier of law should assess Prong B in the context of the shipper-broker-carrier model established by the FMCSA. California courts, however, recognize that applying the ABC test mechanically and

uniformly—as Plaintiffs seek to do here—leads to "absurdities" and illogical results. *See, e.g., Henderson v. Equilon Enters.*, 40 Cal. App. 5th 1111, 1129 (2019). For that reason, and as explained in CEVA's moving papers, the Court should interpret CEVA's "course of business" in a narrow manner and in harmony with the roles established by the FMCSA. Namely, because CEVA operated as a shipper in this context, the work performed by Plaintiffs as licensed motor carriers was outside the course of what it does.

      Plaintiffs respond that applying Prong B narrowly would undermine the broad scope of the ABC test, but it cannot possibly do that given the highly specific and federally regulated roles at issue. Here, Plaintiffs operated as licensed motor carriers and obtained freight through a licensed broker (Cargomatic) which satisfies the ABC test. A narrow interpretation of Prong B in this context, even if it makes it harder *for Plaintiffs* to sue shippers who place freight through a licensed broker, would not undermine the ABC test and would instead read the statute in harmony with the roles established by the FMCSA.

      While Plaintiffs argue there is no direct legal authority supporting a narrow interpretation of Prong B in this context, they also fail to identify case law that prevents the Court from doing so, and courts have that discretion. *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 975 (N.D. Cal. 2016) (observing without state authority, "'[w]hen given a choice between an interpretation of [state] law which reasonably restricts liability, and one which greatly expands liability, we should'—as a general matter—'choose the narrower and more reasonable path (at least until the [state] Supreme Court tells us differently)'") (citation omitted).

      The shipper-broker-carrier model is unique, and those cases on which Plaintiffs rely are factually distinguishable: none involved a circumstance in which a federally-licensed freight broker, like Cargomatic, contracted with federally-licensed motor carriers, like Plaintiffs, to haul freight for a shipper like CEVA. Plaintiffs' cases involved *interrelated* hiring entities in the business of franchising, cleaning, or

ride sharing services. Without a narrow interpretation, applying the ABC test to *any* and *all* alleged hiring entities in the shipper-broker-carrier model would create absurd conclusions. (*See* CEVA's Opposition to Plaintiff's Motion, Section III.A.2.)

Finally, the cases cited by Plaintiffs to argue that CEVA cannot "avoid the ABC test by engaging intermediary parties" are inapposite, as all three cases involve either a parent and subsidiary corporation, or the plaintiffs entered into a contract *directly* with the defendant. Here, it is undisputed that Cargomatic, a federally-licensed property broker, contracted with Plaintiffs, who are federally-licensed motor carriers, to haul freight for Cargomatic's shipper customers, and that Cargomatic contracted with shipper customers, including CEVA, to arrange any the transportation of its customers' freight by motor carriers like Plaintiffs. (SUF16,49) CEVA's contract with Cargomatic was not an attempt to "avoid the ABC test," as Plaintiffs suggest, but a choice to outsource its freight transportation needs to a freight broker, which is a common, *and legal*, model in this highly regulated shipper-broker-carrier industry. Indeed, it is precisely the arrangement contemplated by applicable federal law.

Applying the ABC test to a shipper like CEVA would undermine the legal shipper-broker-carrier model.

**B.     The Undisputed Evidence is That CEVA Operates as a Shipper**

Contrary to Plaintiffs' objections, CEVA is the "shipper" in this shipper-broker-carrier model. Plaintiffs rely on CEVA's website stating that "CEVA Logistics provides a wide range of supply chain solutions for large and medium-size national and multinational companies across the globe, including air, ground and rail freight, as well as warehousing and fulfillment." (Plaintiffs' Opposition at 14-17). However, this simply underscores the fact that CEVA provides global supply chain management solutions and end-to-end logistics solutions for its customers and is not a trucking company. (SUF9-12)

While Plaintiffs argue that CEVA identifies itself as a "Carrier/Broker" on the FMCSA website, that argument is nothing more than a red herring. In performing end-

to-end logistics solutions for its global customers, CEVA *may* act as a carrier or a broker; however, *here*, CEVA is a shipper. (SUF16-17,49) What's more, Plaintiffs provide no evidence to support any claim that CEVA performed as a carrier or broker here. In fact, evidence shows otherwise. CEVA as a "shipper" contracted with Cargomatic, as a broker and, in turn, Cargomatic contracted with each Plaintiff as a "motor carrier" to "operate[] commercial motor vehicles…to transport property…." (SUF2,16-20,39-41,43,49-50) None of these roles are the same. In the context of the shipper-broker-carrier model *here*, CEVA's *only* business was as a shipper of its customers' goods, (SUF16-19,42-43,49), while Plaintiffs were responsible for *actually* moving those goods using their own vehicles and workers. (SUF39-41,49,67,70) CEVA is not a *motor carrier* in this circumstance. CEVA contracted with *Cargomatic*, a freight *broker*, to arrange for the transportation of its freight by motor carriers. The only motor carriers in this equation are Plaintiffs. (SUF16-17)

Plaintiffs' arguments are either factually incorrect or undisputed. For instance, Plaintiffs argue employee drivers and Plaintiffs are interchangeable (SUF20,73-80), CEVA relies on its own employees to transport freight (*id*.), CEVA provides some of the necessary tools and equipment to drivers (SUF67,SGD57[1]), CEVA's customers are the shippers (SUF49("Cargomatic provides a service that ***connects*** motor carrier businesses ('Carriers') ***to entities*** who need to ship cargo…(***each, individually, a 'Shipper' and collectively, 'Shippers'***)…"), or that CEVA staff regularly interact with and assist drivers in handling its customers shipments (SGD68(OCE:Ex.7))[2].

Plaintiffs' other arguments that CEVA is a "trucking company" are immaterial: CEVA manages the customer relationship; Cargomatic provided training on CEVA's instructions and expected Cargomatic to monitor and take action to ensure compliance with its service requirements; employee drivers and Plaintiffs work out of the same

---

[1] *See* CEVA's Statement of Genuine Disputes ("SGD") (Dkt. 139).
[2] *See* CEVA's Opposition Compendium of Evidence ("OCE") (Dkt. 138).

facilities; and CEVA sets the policies, procedures, and service requirements. None of these so-called facts support Plaintiffs' contention that CEVA is a "trucking company." They only show the terms of CEVA's entirely legal shipper-broker relationship with Cargomatic.

As to Plaintiffs' assertion that CEVA protects its "trucking business" by barring Cargomatic and drivers from providing trucking services to its clients, not only does this not support Plaintiffs' contention here, but the evidence shows this clause is common in all logistics contracts, and in fact, is also in the TOS between *Cargomatic*, a freight broker, and each Plaintiff. (SGD92(OCE:Ex.7);SUF49(TOS§2.9)) As to Plaintiffs' argument that CEVA prepares forms for drivers to document their work, this too is commonplace, and the forms are "pretty standard" in logistics. (SGD56(OCE:Ex.7)) None of Plaintiffs' purported facts are persuasive or support their contentions.

### C. CEVA Satisfies Part B of the ABC Test

In their efforts to characterize CEVA as a "trucking company," Plaintiffs tacitly recognize an important fact—*unless* they can show that CEVA is a "trucking company" comparable to Plaintiffs' own motor carrier businesses, CEVA satisfies Prong B because its "course of business" differs from Plaintiffs.

#### 1. **Plaintiffs were incidental to CEVA's business**

Plaintiffs essentially argue that, because CEVA provides "freight transportation" services for its customers, and Plaintiffs provided trucking services to Cargomatic, that Plaintiffs were necessary to CEVA's usual course of business. (Plaintiffs' Opposition at 20:22-24)

First, CEVA is not a "trucking business." CEVA is a global logistics company that provides a wide range of supply chain solutions for its customers. (SUF7-11,16,39,42-43) In contrast, each *Plaintiff* owns a trucking business. (SUF41)[3]

---

[3] Plaintiffs argue their businesses were not "distinct legal business entities"; but this is a difference without distinction. Plaintiffs all filed fictitious business statements with

<u>Second</u>, Plaintiffs rely on conduct prior to the covered period to support their argument here. Any time or purported conduct prior to the covered period is immaterial.

<u>Third</u>, Plaintiffs argue that CEVA employed company drivers to perform ground transportation even after its contract with Cargomatic. (Plaintiffs' Opposition at 19:11-13) This not only is irrelevant to the analysis of whether *Plaintiffs* were incidental to CEVA's business *during the covered period* but supports the fact that CEVA is not a "trucking business." It is undisputed that CEVA does not rely on its own drivers or its own operating authority to move the goods that are transported by licensed motor carriers, like Plaintiffs, and that in response to customer needs, CEVA hired these employee drivers to perform services that otherwise could *not* be fulfilled by licensed motor carriers, like Plaintiffs.[4] (SUF20,73-76,79-80;OCE,Ex.5:171:8-24) Furthermore, of those specialty services provided, employee drivers only perform a tiny fraction of the pickup and delivery work performed by Plaintiffs. (*Id*.; OCE, Ramirez, Decl. ¶¶3-4) Brokers' third-party partners, such as Plaintiffs' motor carrier businesses, and the CEVA employee drivers are clearly *not* interchangeable.

Moreover, it is immaterial to whether Plaintiffs are incidental to CEVA's business *as a whole* that "drivers perform 90% of CEVA's freight movements in California equating to about 400-500 shipments a day." (Plaintiffs' Opposition at 19:14-19). Not only is this a term in a negotiated business contract with *Cargomatic*, but this is simply irrelevant to whether Plaintiffs were incidental to *CEVA's* business providing supply chain management solutions and end-to-end logistics solutions, *as a*

---

the State of California. According to the IRS, even a sole proprietorship is considered a business. *See* www.irs.gov/businesses/small-businesses-self-employed/business-structures. Further, it is undisputed each Plaintiff filed tax returns deducting labor and business expenses related to the running of their *businesses*, and Plaintiffs received compensation for all trucking services provided *by their businesses* through the Cargomatic app. (SUF41,54,68)

[4] For example, Plaintiffs don't drive electric vehicles or operate tractor-trailers, like employee drivers; employee drivers don't drive vans, like Plaintiffs. (SUF67,75-76;79-80;(SGD16(OCE:Exs.5,7);OCE,Ramirez Decl. ¶7).

DEFENDANT CEVA FREIGHT, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

*whole.* As a freight forwarder, CEVA *expects* to have significant movement of freight daily—that's what CEVA does—it arranges for the transportation of its customers' freight. But significant movement of freight doesn't make CEVA a trucking company any more than it is a shipping line or an airline or a train company, even though it also relies on those means of conveyance too.

<u>Fourth</u>, the fact that CEVA collects payment for shipping from its customers is wholly irrelevant. CEVA does not work for free, even as a shipper. As CEVA's website shows, the amounts it collects are for a wide range of services of which first or last mile delivery may be immaterial or unneeded.

<u>Fifth</u>, while CEVA certainly profits from the shipments Cargomatic arranges and fulfills, like any business relationship, CEVA's success as a business neither depends on Plaintiffs' businesses, because CEVA's usual course of business is not driving trucks, nor it is CEVA's primary source of profits.[5] (SUF8-12,15,22,73-77,79-80)

<u>Finally</u>, Plaintiffs' cited cases are clearly distinguishable. (Plaintiffs' Opposition at 19:27-20:24) *None* of the cases cited by Plaintiffs have facts where, as here, defendant contracted with a third party (Cargomatic) that contracted with the plaintiffs' businesses, to provide motor carrier services by the plaintiff, to the third party's clients (CEVA *and others*). On the contrary, all the cases Plaintiffs cited involved a *direct* relationship between the defendant and the plaintiffs.

Because there is no "permanent integration" of Plaintiffs' businesses into the heart of CEVA's business as a provider of supply chain solutions, as Plaintiffs allege, Plaintiffs are incidental to CEVA's business *as a whole*.

### 2. **Plaintiffs did not continuously perform work for CEVA**

Plaintiffs did not continuously work in CEVA's "freight transportation

---

[5] *Compare* Fernandez gross earnings between 2019 and 2022 (SUF70) with Dkt. 111-1, pp. 7 ("For the fiscal years ended December 31, 2009, 2010 and 2011, [CEVA Logistics] generated revenues of $7.7 billion, $9.1 billion and $9.6 billion….")

DEFENDANT CEVA FREIGHT, LLC'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

business" as alleged. (Plaintiffs' Opposition at 21-22). This allegation is also entirely too far-reaching.[6] CEVA provides supply chain management solutions and end-to-end logistics solutions for its customers, including by contracting with various entities to arrange transportation of its customers' property, including by air, ocean, ground and rail freight. (SUF8-9,11) Here, CEVA, as a shipper, contracted with Cargomatic, as a broker, to arrange for motor carrier transportation on a for-hire basis. (SUF16-17)

Next, it is undisputed that, since at least 2017, CEVA contracted with Cargomatic to provide trucking services for CEVA's customers. (SUF16(Ex.5),42-43) CEVA *informed* the drivers who were then contracting directly with CEVA that CEVA would now be contracting with Cargomatic as a freight broker. (SUF44-48) Any drivers who wished to continue provide trucking services, *should* they decide to continue hauling, would need to become licensed motor carrier and obtain freight through Cargomatic—whether to work with CEVA or with other shippers. (*Id.*) CEVA did not assist, in any way, with the transition to licensed motor carrier status, provide loans for vehicles, direct people to preferred vendors, or otherwise facilitate the transition or certification process. (*Id.*) Any argument that CEVA "*asked* the same group of drivers to sign up with Cargomatic to *continue* the same work" is contrary to the undisputed evidence.

As to CEVA's core argument here, Plaintiffs did not work continuously for CEVA, because they had the *total* freedom over what jobs they chose. (SUF58,60-62) Plaintiffs argue that whether Plaintiffs hold themselves out as a business or what freedom they have go to Parts A and C[7]—but this attempt to redirect is not compelling.

Plaintiffs provided transportation services as licensed motor carriers to various Cargomatic customers, including, *but not limited to*, CEVA. (SUF37-38,58-60) Plaintiffs attempt to dispute this fact by stating that they "*rarely* rejected work or

---

[6] Plaintiffs again rely on conduct that occurred prior to the covered period; as before, this is immaterial.

[7] Plaintiffs again argue they did not form "legal entities," which is immaterial.

served other customers" and "worked *nearly* exclusively for CEVA" but this does not negate the evidence. (*Id*.;SUF62) Through the Cargomatic platform, Plaintiffs could seek to transport freight for numerous businesses other than CEVA, *which they did*, including moving freight for shippers like Office Depot and C.H. Robinson. (SUF38,58; OCE,Ex.7:117:16-118:12,253:22-254:24; Ex.8:212:25-215:15; Ex.9:149:24-150:4) While Plaintiffs' motor carrier businesses primarily focused on CEVA work, this was *their* choice. Additionally, it is undisputed that Plaintiffs had the choice to refuse a shipment, *which they did*. (SUF62;OCE:Ex.7:139:16-141:1) Plaintiffs can't simply disregard the evidence that negates their contention they "continuously" drove "for CEVA."[8]

Plaintiffs also attempt to dispute the evidence that they didn't work for CEVA at all. While Plaintiffs state "[d]isputed in part as to each Plaintiff executing a TOS 'on behalf of their motor carrier business,'" the fact remains undisputed. Plaintiffs executed a TOS *with Cargomatic,* not CEVA. (SUF49-50)

Finally, Plaintiffs argue they were required to follow CEVA's instructions. It is common for Cargomatic's clients to have specifications and requirements. (SGD101-103(OCE:Ex.7)) Not only is this part of any business, but it doesn't support Plaintiffs' assertion that they "continuously" drove "for CEVA," simply because CEVA wants its customers' deliveries to be made within the time its customers demand, CEVA wants proof of delivery, which is tied to its payment to Cargomatic for Cargomatic's services, or CEVA doesn't want trash left by the motor carriers at its facilities creating safety issues. (SUF16(Ex.5(§9));SGD52,98-99;OCE:Ex.7:77:12-78:8;206:8-25;253:4-21)

      **3.**    **CEVA does not proclaim to be in the truck driving business**

Plaintiffs contend that CEVA focuses on language in its contract with Cargomatic that it is a shipper, rather than its public statement on the CEVA Logistics

---

[8] Plaintiffs' argument they all worked "fulltime," is contrary to the evidence. (SUF71)

website that it provides ground transportation of freight, including the same services Plaintiffs performed. (Plaintiffs' Opposition at 22-24) As above, Plaintiffs erroneously suggest that CEVA holds itself out as providing "truck driving," when, in fact, the website identifies the global supply chain solutions offered by CEVA Logistics, including air, ocean, ground and rail freight, warehousing and fulfillment, end-to-end logistics solutions, and that CEVA Freight, LLC is a freight forwarder, which includes responsibility for warehousing and "final mile" fulfillment services for goods that are moving through CEVA Logistics' system. (SUF8-12)

Nowhere on CEVA Logistics's website does it state that *in California*, much less *in the Los Angeles and Ontario locations*, where Plaintiffs picked up CEVA freight for delivery, it provides ground freight transportation services, as Plaintiffs contend. Instead, Plaintiffs attempt to persuade the Court that, because a global company lists on its website services it provides world-wide, in places like Canada and Mexico, that such statements should be construed to support Plaintiffs' statements that CEVA holds itself out as providing "truck driving" services. CEVA's website clearly undercuts that theory.

Nowhere does CEVA proclaim itself to be a "trucking company," just as it does not purport to be a shipping line or an airline or a train company. The fact that CEVA's logistics operations include obtaining transportation by truck is immaterial, as "freight transportation services" is not coextensive with "trucking services." Where "a business has legitimately defined the boundaries of its operation, and outsourced functions it considered to be beyond those boundaries to 'separately defined' businesses or third parties. . .[Prong B] cannot be used to expand those boundaries." *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 119 (D. Mass. 2015); *Curry v. Equilon Enters.*, 23 Cal. App. 5th 289, 315 (2018). Indeed, the fact that trucking is not in the "usual course" of CEVA's business is demonstrated by the fact that it outsourced this function to *Cargomatic*, not Plaintiffs. (SUF16,49-50)

### III. CONCLUSION

For the above-mentioned reasons, Plaintiffs as licensed motor carriers do not perform work in the usual course of CEVA's business as a shipper. As a result, the Court should find that CEVA has established, as a matter of law, that it satisfies Prong B of the ABC test, pursuant to California Labor Code § 2775(b)(1).

DATED: June 30, 2025                    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.

By: /s/*Alexander M. Chemers*
Robert R. Roginson
Alexander M. Chemers
Juliana C. Vallier

Attorneys for Defendant
CEVA FREIGHT, LLC

The undersigned, counsel of record for Defendant CEVA Freight, LLC, certifies that this brief contains 3,186 words, which complies with the word limit set by Judge Wright's Motion Requirements, and Local Rule 11-6.1.

Dated:  June 30, 2025                   By: /s/Juliana C. Vallier
                                            Juliana C. Vallier

90659183.v4-OGLETREE