
Aaron Kaufmann, SBN 148580
akaufmann@kgworklaw.com
Elizabeth Gropman, SBN 294156
egropman@kgworklaw.com
KAUFMANN & GROPMAN, LLP
1939 Harrison Street, Suite 620
Oakland, CA 94612
Telephone: (510) 817-4380

*(Additional Counsel on Next Page)*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROOSEVELT ESPINOSA; RUXNER ANDINO; EMEKA ANIAGBA; MAYCOL CAMEY; HANS DURAN; JOSE FERNANDEZ; CESAR GALINDO; ANTONIO HERMOSILLO; OTASOWIE ISIBOR; ISRAEL PONCE; SONIA ALVAREZ, successor in interest to and as substituted for RAFAEL ZAYAS; and MANUEL GUZMAN,<br><br>　　　　Plaintiffs,<br>　v.<br>CEVA FREIGHT, LLC., a Delaware Company; and DOES 1-10, inclusive,<br>　　　　Defendants. | CASE NO. 2:23-CV-00659 ODW (Ex)<br>[Assigned to the Honorable Otis D. Wright II – Courtroom 5D]<br>**PLAINTIFFS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT [FRCP 56]**<br><br>**Date:**　July 14, 2025<br>**Time:**　1:30 pm<br>**Before:**　Hon. Otis D. Wright, II<br>**Final PTC:**　Sep. 22, 2025<br>**Trial Date:**　Oct. 14, 2025 |

PLTFS' REPLY MPA ISO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
CASE NO. 2:23-CV-00659 ODW (Ex)

James M. Finberg, SBN 114850
jfinberg@altshulerberzon.com
Eve H. Cervantez, SBN 164709
ecervantez@altshulerberzon.com
Amanda C. Lynch, SBN 318022
alynch@altshulerberzon.com
Jonah Lalas, SBN 286755
jlalas@altshulerberzon.com
Alice X. Wang
awang@altshulerberzon.com
ALTSHULER BERZON LLP
177 Post Street, Suite 300
San Francisco, California 94108
Telephone: (415) 421-7151
Facsimile: (415) 362-8064

Cornelia Ho-Chin Dai, SBN 207435
cdai@hadsellstormer.com
Sarah Cayer, SBN 334166
scayer@hadsellstormer.com
HADSELL STORMER RENICK & DAI LLP
128 N. Fair Oaks Ave.
Pasadena, California 91103
Telephone: (626) 585-9600
Facsimile: (626) 577-7079

*Attorneys for Plaintiffs*

TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ...................................................................................................... 1

    A. CEVA Fails To Identify Genuine Disputes Of Material Fact ................. 1

    B. CEVA Cannot Avoid Application Of The ABC Test............................. 3

        1. Whether Cargomatic Meets the ABC test is Irrelevant ................ 3

        2. The "Business-To-Business" Exemption Does Not Apply ........... 4

    C. CEVA's "Role" Under The FMCA Does Not Affect Its Business Under Part B ............................................................................................ 5

    D. CEVA Fails To Meet Its Burden On Part B ............................................ 6

        1. CEVA Does Not Dispute It Is In The Freight Transportation Business ........................................................................................ 6

        2. CEVA'S Part B Showing Fails Under The *Vazquez* Inquiries...... 8

    E. Plaintiffs Do Not Seek Summary Judgment Under Section 2810.3 ...... 10

III. CONCLUSION ................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Dynamex Operations W., Inc. v. Super. Ct.*,
   4 Cal. 5th 903 (2018)...........................................................................................7
*Ghukasyan v. BMW N. Am., LLC*,
   2021 WL 1654495 (C.D. Cal. Apr. 27, 2021)......................................................2
*Goro v. Flowers Foods, Inc.*,
   2021 WL 4295294 (S.D. Cal. Sept. 21, 2021).....................................................3
*In re Field Asset Servs. Inc.*,
   2024 WL 334863 (N.D. Cal. Jan. 29, 2024).........................................................3
*Lawson v. Grubhub, Inc.*
   665 F.Supp.3d 1108 (N.D. Cal. 2023) .......................................................5, 7, 8, 9
*Ludlow v. Flowers Foods, Inc.*,
   2022 WL 2441295 (S.D. Cal. Jul. 5, 2022)..........................................................3
*Moreno v. JCT Logistics, Inc.*,
   2019 WL 3858999 (C.D. Cal. May 29, 2019).....................................................3
*Neupane v. Magna Legal Servs., LLC*,
   2021 WL 4481661 (N.D. Cal. Sept. 30, 2021).....................................................9
*S. G. Borello & Sons, Inc., v Dep't of Indus. Rels.*,
   48 Cal.3d 341 (1989).............................................................................................5
*Sportsman v. A Place for Rover, Inc.*,
   537 F.Supp.3d 1081 (N.D. Cal. 2021) .................................................................9
*Taylor v. Shippers Transp. Express, Inc.*,
   2014 WL 12560878 (C.D. Cal. May 27, 2014) ...................................................3
*United States v. TruConnect*,
   2022 WL 3009130 (C.D. Cal. June 21, 2022) .....................................................2
*Vazquez v. Jan-Pro Franchising Int'l*,
   986 F.3d 1106 (9th Cir. 2021).......................................................................*passim*
*Whitaker v. Farm-to-Table Eats, Inc.*,
   2021 WL 6496731 (C.D. Cal. Aug. 24, 2021).....................................................2

Labor Code
   § 2775 ....................................................................................................................6
   § 2776 ................................................................................................................4, 5
§ 2810.3.................................................................................................................11
49 C.F.R.
§375.103 ................................................................................................................6

## I. INTRODUCTION

Defendant CEVA Freight, LLC ("CEVA") presents no colorable argument that it can prove the Bellwether Plaintiffs' ("Plaintiffs") work was outside its "usual course of business" under Part B of the ABC test. Its opposition states it is a "freight forwarder, which includes warehousing and 'final mile' fulfillment services for goods that are moving through CEVA Logistics' system," Dkt. 138 ("Opp.") 23:16-18. CEVA admits Plaintiffs "transported freight through Cargomatic, as the broker, for CEVA's customers." Dkt. 139, Defendants' Statement of Genuine Disputes ("SGD") 25-28. CEVA's inability to prove Part B defeats its independent contractor defense.

CEVA argues to avoid application of the ABC test entirely but offers neither facts nor law in support. CEVA's SGD presents impermissible argument and extraneous facts but fails to present genuine disputes of material fact. While both sides move to resolve CEVA's independent contractor defense under Part B of the ABC test, the evidence establishes Plaintiffs' work was within CEVA's usual course of business and thus defeats CEVA's defense.

## II. ARGUMENT

### A. Ceva Fails To Identify Genuine Disputes Of Material Fact

Contravening the Court's instructions, Dkt. 32, ¶6.f.(iv), CEVA's brief neither cites Plaintiffs' Separate Statement, Dkt. 112-2, nor its SGD. Instead, CEVA cites *its own* separate statement filed with its own motion. Dkt. 116-2.[1]

While CEVA's SGD is rife with argument and unnecessary information, it includes no additional facts in the format the Court requires. Dkt. 139. These tactics obscure whether CEVA *genuinely* disputes Plaintiffs' material facts and deprive Plaintiffs the opportunity to respond to the information CEVA submits in opposition. Dkt. 32, ¶6.f.(i). The SGD is "not a mere procedural hoop" but "an essential tool that facilitates the orderly briefing and adjudication of a summary judgment motion."

---

[1] Plaintiffs filed a Statement of Genuine Disputes to this document in opposition to CEVA's Motion for Summary Judgment (Dkt. 130).

*Whitaker v. Farm-to-Table Eats, Inc.*, 2021 WL 6496731, at *2 (C.D. Cal. Aug. 24, 2021). The Court should disregard CEVA's arguments that fail to comply with the CMO. *See United States v. TruConnect*, 2022 WL 3009130, at *5 (C.D. Cal. June 21, 2022) (disregarding portions of SGD that were noncompliant with Standing Order); *see also Ghukasyan v. BMW N. Am., LLC*, 2021 WL 1654495, at *1 (C.D. Cal. Apr. 27, 2021) (Wright, J.) (rejecting noncompliant reply brief).

Analysis of CEVA's SGD reveals there are no genuine disputes of material fact. Many of CEVA's "disputes" substantively support Plaintiffs' facts.[2] For example, CEVA "disputes" that "CEVA invoices and collects payment from customers for all pickups and deliveries made performed by Drivers and Company Drivers" by confirming that "CEVA invoices and collects payment from its customers for all transportation services." SGD-91. Other CEVA's "disputes" note information unrelated to Plaintiffs' fact.[3] For example, CEVA "disputes" that "[i]nside CEVA's Torrance and Bloomington facilities, CEVA dock supervisors plan for the daily freight movement orders" on the basis that "Cargomatic, not CEVA, communicates with the licensed motor carriers regarding shipments and assignments." SGD-64. CEVA's information about communication does not address Plaintiffs' fact about planning. Similarly, CEVA contests many facts (e.g., "Cargomatic communicates with Drivers to facilitate their compliance with CEVA's rules and regulations") with the non-sequitur that "CEVA, as a shipper, requires Cargomatic, as a broker, and its motor carriers, to comply with CEVA's customer's specifications," *see, e.g.,* SGD-102.

Finally, CEVA disputes several facts without genuine evidentiary basis.[4] For example, CEVA disputes "Plaintiff Espinosa performed 'high value' delivery assignments for CEVA and its customers during the liability period," SGD-46, even though CEVA testified it knew that "Mr. Espinosa had performed some high value

---

[2] *See* SGD-53, 55, 65, 67, 74, 77, 87, 88, 90, 91, 97, 100, 104.
[3] *See* SGD-11-17, 21, 25-48, 56, 60, 61, 64, 66, 70, 71, 75, 76, 79, 81, 92-95, 98, 101-103.
[4] *See* SGD-3, 22-24, 62, 63, 68, 78, 85, 89, 96.

transports as a Cargomatic driver." Dkt. 115-1, 49:13-50:1. CEVA also disputes several facts on the basis that "Cargomatic does not employ 'dispatchers,'" SGD-56, 58, 62, 85, even though CEVA repeatedly referred to "Cargomatic dispatchers" and Cargomatic confirmed it had "operations coordinators" who perform dispatching. Dkt. 115-1, 69:16-17 ("Ceva dispatchers send the movement order to the Cargomatic dispatchers"); *see also id.,* 53:20-24 ; Dkt. 119-7, 59:16-21; Dkt. 146-5, 26:4-19.

Finally, CEVA's detour into its "*substantial*" settlements of prior misclassification lawsuits, Opp. 11:7-23, is immaterial. Likewise, Plaintiffs' "[t]ax records bear little if any relationship to determining [employment status]." *Taylor v. Shippers Transp. Express, Inc*., 2014 WL 12560878, at *2 (C.D. Cal. May 27, 2014).

In sum, behind CEVA's facade of a voluminous "disputed" record, the undisputed material facts show CEVA cannot prove Part B.

### B.  CEVA Cannot Avoid Application Of The ABC Test

#### 1. Whether Cargomatic Meets the ABC Test is Irrelevant

CEVA's assertion that the Court cannot apply the ABC test to CEVA because CEVA did not contract directly with Plaintiffs, Opp. 15:2-17:11, contradicts *Vazquez v. Jan-Pro Franchising Int'l,* 986 F.3d 1106 (9th Cir. 2021). "[T]he ABC test applies to a dispute between a putative employee and a hiring entity even if they are not parties to the same contract." *Id*. at 1124. "[P]utative employers cannot avoid liability by intentionally structuring their business or relationships with other entities to avoid providing the legal protections afforded to workers." *In re Field Asset Servs. Inc.*, 2024 WL 334863, at *7 (N.D. Cal. Jan. 29, 2024) (collecting cases)*; see also Ludlow v. Flowers Foods, Inc*., 2022 WL 2441295, at *3-4 (S.D. Cal. Jul. 5, 2022) (finding parent and subsidiary corporations were employers under ABC test despite plaintiffs contracting only with subsidiary as all defendants benefited financially from the work); *Goro v. Flowers Foods, Inc*., 2021 WL 4295294, at *13-14 (S.D. Cal. Sept. 21, 2021) (same); *Moreno v. JCT Logistics, Inc*., 2019 WL 3858999, at *7 (C.D. Cal. May 29, 2019) ("the ABC test is equally applicable to drivers who contracted directly with

Defendants and drivers hired by carriers who contracted with Defendants").

Here, that Plaintiffs provided services to CEVA is beyond dispute; CEVA admits that Plaintiffs "moved freight for Ceva during the relevant period using the Cargomatic app," Dkt. 115-1, 15:7-15, and that some Drivers "tend to service the same geographic area" and "Ceva business clients on a regular basis," *id.,* 52:19-53:13. Thus CEVA cannot exempt itself from proving the ABC test by inserting Cargomatic as an intermediary.

### 2. The "Business-to-Business" Exemption Does Not Apply

Though application of the ABC test does *not* depend on whether CEVA contracted directly with Plaintiffs, the "business-to-business" ("B2B") exemption *does*. The exemption states that the ABC test does not govern employment status if a "business service provider" "contracts to provide services to" a "contracting business," and the "contracting business" satisfies 12 criteria. Labor Code § 2776(a).

CEVA cannot invoke the B2B exemption because it does not have a "bona-fide business-to-business *contracting* relationship" with Plaintiffs. Labor Code § 2776. Because CEVA does not contract directly with Plaintiffs, Opp. 15:2-3, Dkt. 130, ¶¶44-45, it is not a "contracting business."

CEVA also cannot satisfy *all* required criteria. Labor Code § 2776(a). Plaintiffs do not concede that CEVA can meet *any* of the criteria but its inability to meet *any* one criterion is fatal, namely:

- CEVA cannot prove "[t]he contract with the business service provider [Plaintiffs] is in writing" and specifies certain information, *id.* § 2776(a)(3), because CEVA does not contract with Plaintiffs. CEVA's reliance on Cargomatic's contract with Plaintiffs to meet this requirement, *see* Opp. 25:14-28, circumvents the B2B exemption's purpose of evaluating *the parties*' "contracting relationship."

- CEVA cannot prove that Plaintiffs were "providing services directly to the contracting business rather than to customers of the contracting business," § 2776(a)(2), as CEVA admits that "Plaintiffs transported freight through Cargomatic, as the broker, for CEVA's customers." SGD-26-28.
- There is no evidence that each Plaintiff "advertise[d] *and* [held] itself out to the public as available to provide the same or similar services." § 2776(a)(8) (emphasis added). CEVA's evidence that Plaintiffs occasionally worked for and were available to other companies through the Cargomatic app is insufficient. *See Lawson v. Grubhub, Inc.* 665 F.Supp.3d 1108, 1116 (N.D. Cal. 2023) (rejecting argument that plaintiff "simply by working for competitors" met this requirement).

Because CEVA is not a "contracting business" *and* cannot meet several criteria of the B2B exemption, the ABC test applies, not *Borello*.[5]

### C.  CEVA's "Role" Under The FMCSA Does Not Affect Its Business Under Part B

Neither law nor facts support CEVA's assertion that the "FMCSR and FMCSA establish a specific role for CEVA in this context" and that the Court "must" interpret CEVA's business as a "shipper." Opp. 17:12-18:25.

CEVA cites no law supporting its assertion that the "roles" under the FMCSA bear on the employment relationship of parties operating as shippers, freight forwarders, motor carriers, or brokers. Nor could it, since the "FMCSA's mission is to reduce crashes, injuries, and fatalities involving large trucks and buses." Dkt. 117-5 ("Who is the FMCSA?" Webpage).

Moreover, contrary to CEVA's assertion, the "roles" set forth in the FMCSR are not distinct. CEVA's evidence confirms that a "shipper" or "freight forwarder," like

---

[5] Plaintiffs do not address the *Borello* factors because Plaintiffs' motion is premised solely on the ABC test, Dkt. 112 (Notice of Motion), as *Borello* does not apply to their claims. *See* MSJ, 14:12-15:2. CEVA has not contested application of the ABC test aside from its B2B argument and premised its own summary judgment motion solely on the ABC test. *See* Dkt. 116.

CEVA, Opp. 23:16, can move freight itself. The definition of "commercial shipper" states that "[a] freight forwarder tendering a shipment to a carrier in furtherance of freight forwarder operations is also a commercial shipper," 49 C.F.R. §375.103. The FMCSA explains, "Freight Forwarders assume responsibility for the transportation and *may transport the freight itself*." Dkt. 117-3 ("What are the definitions of motor carrier, broker, and freight forwarder authorities?" Webpage) (emphasis added). Therefore, contrary to CEVA's suggestion, the FMCSR do not prevent a "shipper" from transporting freight within its "usual course of business."

Nonetheless, CEVA's representation that it "exclusively functions as a shipper" contradicts its FMCSA registration ("Carrier/Broker") and its operating authority (Motor Carrier and Freight Forwarder). Dkt. 130, Response to ¶17; Dkt. 115-1, 94:20-95:12.[6] CEVA's usual course of business includes operating as a motor carrier, admitting it "employs 15 employee drivers who perform specialized transportation for CEVA customers" and who do not hold their own motor carrier authority. Opp. 14:12-24.

In short, even if CEVA was exclusively a "shipper," which it is not, nothing in the FMCSA regulations impacts the analysis of CEVA's "usual course of business" under the ABC test.

### D. CEVA Fails To Meet Its Burden On Part B

#### 1. CEVA Does Not Dispute It is In the Freight Transportation Business

Part B of the ABC test asks whether the worker "performs work that is outside the usual course of the hiring entity's business." Labor Code § 2775(b)(1)(B). Pivoting away from the undisputed fact that CEVA is in the "freight transportation business," CEVA asserts it is not in the "trucking business." *See* Opp. 19:4, 23:7-20. This narrow

---

[6] CEVA has testified that its *customers* are the "shippers." Dkt. 115-1, 196:21-197:11 (identifying CEVA's "external customers" as "the shippers that we service") and 242:9-13 ("CEVA has the customer relationship with the shipper"); *see also* Dkt. 117-2 (FMCSA "Glossary" Webpage, defining "shipper" as "the person (customer) whose goods are being moved").

focus conflicts with Part B, which acknowledges that a worker servicing one aspect of a hiring entity's overall business may still be the entity's employee. *Vazquez*, 986 F.3d at 1126-27 (hiring entity cannot prove Part B "when it performs the putative employee's activity on a regular or continuous basis, without regard to the substantiality of the activity in relation to the enterprise's other business activities," internal quotations omitted). *Dynamex* instructs courts to apply the ABC test "broadly to include within the covered 'employee' category *all* individual workers who can reasonably be viewed as *working in the [hiring entity's] business*." *Dynamex Operations W., Inc. v. Super. Ct.*, 4 Cal. 5th 903, 953 (2018) (internal quotations omitted) (emphasis in original). Thus, the only plausible interpretation of Part B requires analysis of CEVA's business *as a whole.*

      Despite CEVA's attempts to confuse the record, the Parties do not dispute the nature of CEVA's business or Plaintiffs' work. The Parties agree "CEVA Freight, LLC is a freight forwarder, which includes responsibility for warehousing and 'final mile' fulfillment services for goods that are moving through CEVA Logistics' system." Opp. 23:16-18; SGD-1, 2, 4-10 (undisputed facts describing CEVA Logistics' business, including "pick-up and delivery services"). CEVA also agrees it "is a 'world leader' that 'transports freight by ground, air, ship, and train, and provides warehousing, pick-up/delivery, and freight management services." Opp. 20:8-13. CEVA testified it has a "ground operation," meaning "trucks and vans moving freight," Dkt. 115-1, 25:16-18; SGD-3. CEVA admits Plaintiffs' work is to "drive a truck to move freight from one location to another" and that "Plaintiffs transported freight through Cargomatic, as the broker, for CEVA's customers." Opp. 25:5-6; SGD-26-28. CEVA even admits that its business encompasses trucking. Opp. 8-10.

      Thus, "common-sense observation," *Vazquez*, 986 F.3d at 1125, confirms the close connection between the CEVA admitted services as a freight forwarder, including "'final-mile' fulfillment services," Opp. 23:16-18, and Plaintiffs' pick-up and delivery work. *See Lawson*, 665 F.Supp.3d at 1122 (noting common-sense connection between

delivery drivers' work and the "rest of Grubhub's business [including] restaurant marketing, transmitting orders between diners and restaurants, and facilitating delivery by the restaurants or pickup by the diners").

### 2. CEVA's Part B Showing Fails Under the *Vazquez* Inquiries

As in its own motion, CEVA misconstrues all three of the *Vazquez* Part B inquiries. *See* Dkt. 129 (Oppos. to CEVA's Mtn. Partial Summary Judgment) 16-25.

<u>First</u>, CEVA argues Plaintiffs were not necessary to its business because Plaintiffs' and CEVA's work "are not the same." Opp. 20:13-15. But Part B "does not require the putative employee's aspect of the business to be the majority or a substantial percentage of the hiring entity's business," *Lawson*, 665 F.Supp.3d at 1122, let alone its entire business. *Id.* at 1123 (looking at percentage of the hiring entity's business impedes fair application of the ABC test because "[f]or a huge company, any one aspect of its business might represent a small percentage of its transactions, revenues, and putative employees"). Therefore, that Plaintiffs' work was not "the same" as CEVA's *whole* business, but rather an aspect of its "usual course of business," confirms Plaintiffs were necessary to CEVA's business.

The *Vazquez* analysis turns on whether the defendant "ultimately depends on someone performing" the work at issue and whether it is "actively and continuously profiting from the performance" of that work. 986 F.3d at 1126. Here, the undisputed evidence supports the "common-sense" conclusion that CEVA depends on Drivers like Plaintiffs to perform its "'final-mile' fulfillment services" for its customers. Plaintiffs' services were not a "specialized component of CEVA's supply-chain."[7] Though CEVA *argues* that its employee drivers and Drivers like Plaintiffs "are not interchangeable," CEVA *testified* they perform the same work. Dkt. 115-1, 71:5-15 ("Q And in California [pick-up and delivery work] is performed by both Cargomatic and company drivers, correct? A Yes."); *see also id.,* 50:2-7, 71:16-25, 76:11-20, 76:21-77:19 (same for other

---

[7] To the contrary, CEVA insists that it uses its "employee drivers to perform specialized transportation for its customers." Opp. 21:12-15.

types of deliveries). CEVA's example that Drivers perform over 97% of the pickups and deliveries in the Ontario market, Opp. n. 7, underscores that CEVA depends on the Drivers to perform the ground transportation it promises its customers. Plaintiffs' work unquestionably generates revenue for CEVA, as CEVA "invoices and collects payment from its customers for all transportation services," including those provided by Plaintiffs. SGD-91.

CEVA's authorities are distinguishable. Unlike the mock juror in *Guynn-Neupane v. Magna Legal Servs., LLC*, 2021 WL 4481661 (N.D. Cal. Sept. 30, 2021)—whose one-day role was to "provide data" and defendant's revenue was not affected by plaintiff's responses or level of participation—the Drivers provide the very services CEVA sells to its customers, and CEVA has a clear interest in how well Drivers perform. *See* SGD-91 ("CEVA bills its customer a tariff for each movement."); Dkt. 115-1, 124:19-125:24 (CEVA told Cargomatic that driver who did not behave in a "professional manner" could no longer transport CEVA freight). Similarly, CEVA is not comparable to the defendant in *Sportsman v. A Place for Rover, Inc.*, 537 F.Supp.3d 1081 (N.D. Cal. 2021), that provided "a marketplace that allows Pet Owners to find and connect with Pet Care Providers," *id.* at *1094, since Plaintiffs unquestionably moved freight for CEVA's customers. CEVA's faulty efforts to style itself as a "shipper" to fit itself into anomalous fact patterns should be rejected. *Lawson,* 665 F.Supp.3d at 1121("[C]ourts have rejected attempts by hiring entities to categorize their businesses as merely enabling, facilitating, or coordinating services rather than providing those services.") (collecting cases).

Accordingly, Plaintiffs' pick-up and delivery services were necessary, not incidental, to the freight transportation services at the core of CEVA's business.

Second, CEVA again exploits its contract with Cargomatic to deny that "the services of the [Plaintiffs] are continuously used by [CEVA]." *Vazquez*, 986 F.3d at 1126 (courts look at "whether the services of the putative employee are continuously used by the hiring entity"). Such argument contradicts the law since, as *Vazquez* noted,

a hiring entity can fail the ABC test even if the putative employee was providing services "indirectly." *Id.* at 1124.

It is undisputed that: until 2016 or 2017, CEVA directly contracted with about 70 drivers including Plaintiffs, SGD-18-19; then, CEVA told those Drivers they had to contract with Cargomatic to continue transporting CEVA freight, SGD-20-21; and, thereafter, Plaintiffs regularly transported freight through Cargomatic for CEVA's customers, SGD-25-27. CEVA cannot genuinely dispute that the Drivers' services have been regularly and continuously used by CEVA for years.

<u>Third</u>, the business CEVA "proclaims to be in," *Vazquez,* 986 F.3d at 1125, is freight transportation, and CEVA's "logistic operations include obtaining transportation by truck." Opp. 23:20-21. CEVA's bald assertion that this is immaterial because it is not a "trucking business" misinterprets the law; as discussed above, the work performed by a putative employee need not be—and almost never will be—coextensive with the putative employer's overall business.

CEVA admits CEVA Logistics advertises its freight transportation services including "warehousing and fulfillment" and "pick-up and delivery services," and touts its "reliable and efficient delivery services to our customers" SGD-7, 9. CEVA also admits CEVA Freight is responsible for the "warehousing and 'final mile' fulfilment services for goods" moving through that system. *Id.,* 23:11-18. CEVA concedes those services encompass truck driving. Opp. 23:7-10. Accordingly, CEVA unquestionably holds itself out as providing freight transportation services, including the services that Plaintiffs provided.

The *Vazquez* inquiries thus show CEVA cannot prove Part B.

### E.     Plaintiffs Do Not Seek Summary Judgment Under Section 2810.3

Finally, the Court should reject CEVA's misuse of Labor Code section 2810.3 to generate disputed facts. Plaintiffs did not move for judgment under Section 2810.3, which presents an alternative and additional liability theory, not a test for CEVA's independent contractor defense. *See, e.g.*, Dkt. 103, ¶¶62-67. Therefore, the Court can

find CEVA fails Part B without considering Section 2810.3.

Moreover, CEVA does not meet the exemptions to Section 2810.3. Assuming CEVA is not "a motor carrier of property" (which it claims, despite contrary evidence), its liability is not based "*solely*" on its use of third-party motor carriers to ship and receive freight. Labor Code § 2810.3(p)(1). And its invocation of the second exemption for a "motor carrier of property" is contradicted by its earlier argument that it is merely a "shipper."

## III. CONCLUSION

The Court should find that CEVA cannot meet Part B of the ABC test and therefore its Second and Third Affirmative Defenses fail as a matter of law.

DATED: June 30, 2025                Respectfully submitted,

                                                             KAUFMANN & GROPMAN LLP

                                                             By: */s/ Aaron Kaufmann*
                                                                    AARON KAUFMANN
                                                                    ELIZABETH GROPMAN

                                                            Attorneys for Plaintiffs

CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, further certifies that this Reply Memorandum of Points and Authorities in Support of their Motion for Partial Summary Judgment (Dkt. 112-1) contains 3,291words, which complies with the word limit set forth in Judge Wright's General Motion Requirements.

By: /s/ Aaron Kaufmann

Attorneys for Plaintiffs